BENCH MEMORANDUM

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
Kenneth M. Wigfall, Respondent,
v.
State of South Carolina, Petitioner.
 
 
 

ON WRIT OF CERTIORARI

Appeal From Jasper County
 Jackson V. Gregory, Circuit Court Judge

Memorandum Opinion No. 2006-MO-017
Submitted March 21, 2006  Filed May 8, 2006

REVERSED

 
 
 
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, of Columbia, for Petitioner.
Assistant Appellate Defender Aileen P. Clare, of Columbia, for Respondent.
 
 
 

 JUSTICE BURNETT:  The post-conviction relief (PCR) judge granted relief to Kenneth M. Wigfall (Respondent), finding his trial attorney ineffective in failing to call two witnesses who would have supported Respondents claim he acted in self-defense.  We reverse.
FACTUAL AND PROCEDURAL BACKGROUND
Respondent lived at a Jasper County mobile home rented by his aunt, Lottie Jordan.  Two other men, Randy Brown (Randy) and Cleveland Brown (Victim), who are not related, also lived with Ms. Jordan.  
Respondents primary defense at trial was that he acted in self-defense and the stabbing was an accident.  Respondent testified he returned home at about 10:30 p.m. on September 20, 1998, after attending a fish fry where he consumed alcoholic drinks.  Additionally, he was taking prescription medication because he had been in a recent automobile accident. 
Victim apparently overheard Respondent argue with his aunt about Respondents use of her car.  Respondent testified he heard Victim, who was in an adjoining bedroom, say, Ill shoot that n_____.  Respondent grabbed a knife and went to the door of Victims room, where he saw Victim reaching across the bed for what Respondent believed was a gun.  Respondent dove across the bed, grabbed Victim and pulled Victim toward him; as he did, Victim was accidentally stabbed in the chest with the knife.  Respondent testified he was afraid of Victim based on his knowledge of Victims violent tendencies and the belief Victim had a gun, but he only meant to disarm Victim and did not intend to harm him.  Respondent admitted he never saw a weapon.  
Respondent testified of several incidents in which Victim was argumentative or threatened violence toward others, including Randy. Respondent further had been told of a handgun and another rifle or shotgun in the Victims bedroom.  Investigators did not find any firearms in the mobile home on the night of the stabbing.  
Ms. Jordan testified Respondent was a disagreeable person and the aggressor in past disputes with Victim.  She described Victim as a very quiet man.  Ms. Jordan denied Victim was a violent person or that he had ever threatened anyone with a knife.  She testified Victim described Randy Brown as his brother.  Ms. Jordan denied knowing Victim had ever shot anyone in the past, and asserted she did not know about his reputation in the community.  On cross-examination, Ms. Jordan testified that Victim, while drunk, previously had pointed a gun at her, and that she had called authorities on two occasions to remove Victim from the house.  
Ms. Jordan testified that, while arguing about the car on the night of the stabbing, Respondent angrily kicked over the kitchen table and said, Ill kill you, b___, and put a knife to her chest.  Respondent said he was going to kill this gray-headed m_____f_____, ran directly into Victims room, and stabbed him in the chest as he lay sleeping.  Ms. Jordan testified Respondent had both a knife and a gun that night, and threatened to kill her and Randy after the stabbing.[1]  Ms. Jordan denied Victim threatened to shoot Respondent immediately before the fatal stabbing. 
Randy Brown testified he heard Respondent argue with Ms. Jordan about the use of her car.  He did not witness the stabbing but heard Ms. Jordan yell for someone to call the police, and then a table overturned.  He denied seeing Victim with a gun previously and did not hear Victim threaten Respondent that night.  Randy testified Victim had shot someone previously, but did not offer testimony corroborating Respondents assertions that Victim had threatened Randy. 
Sheriffs and emergency officials testified at trial that Respondent appeared spacey, belligerent, and somewhat intoxicated when arrested, but he did not resist arrest.  Respondent became wild and began cursing  while seated in the rear of a police cruiser, kicking out a rear passenger window.  Respondent may have been angered by officers refusal to loosen tight handcuffs.  
An autopsy revealed Victim had a blood alcohol level of 0.10 at the time of death.  A urine drug screen tested positive for barbiturates and ephedrine/pseudoephedrine, a cold or sinus medication sold as Sudafed. 
A jury convicted Respondent of voluntary manslaughter.  He was sentenced to twenty-seven years in prison.  This Court affirmed the conviction and sentence.  State v. Wigfall, Op. No. 2001-MO-019 (S.C. Sup. Ct. filed March 20, 2001).
At the PCR hearing, Respondent presented his own testimony, the testimony of Lillie Mae Brown[2] and a stipulation regarding the testimony of Joseph Johnson.
Respondent offered similar testimony to that which he offered at trial regarding his background, his knowledge of Victims reputation for violence, and the circumstances of the fatal stabbing.  Respondent testified he asked his attorney to call Johnson and Lillie Mae Brown.  Respondents attorney testified he did not recall interviewing the witnesses and had no record of them in his file. 
The parties stipulated that Johnson, Ms. Jordans next-door neighbor and landlord, would have testified Victim came to his house carrying a gun about two weeks before the fatal stabbing.  Victim told Johnson he wanted to leave that house.  Victim drank a beer and fell asleep.  Johnson removed the gun from Victims presence and returned the weapon to Ms. Jordans home the next day, handing it to Respondent and another person. 
Lillie Mae Brown testified she was in Ms. Jordans car with Respondent and Victim when Victim began cursing Respondent and threatening to kill him.  While Respondent was in a store, Victim kept on saying, Yeah, hes a dead man, and he started cursing me, threatening me, telling me what he was gonna do to me.  Respondent returned to the car to calm Ms. Brown and Victim, but Victim continued to curse and threaten Respondent.  Ms. Brown testified Victim had a reputation in the community for violence, for slitting people. 
The PCR judge granted relief to Respondent, finding his trial attorney was ineffective in failing to call the two witnesses who would have supported Respondents claim that he acted in self-defense.
ISSUE
Does any evidence of probative value support the PCR judges grant of relief to Respondent?
LAW AND ANALYSIS
The State argues the PCR judge erred in granting relief to Respondent.  We agree.
A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution.  Strickland v. Washington, 466 U.S. 668 (1984).  There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case.  Strickland, 466 U.S. at 690; Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).  In order to prove that counsel was ineffective, an applicant must show that counsels performance was deficient and that there is a reasonable probability that, but for counsels errors, the result of the trial would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.  Strickland, 466 U.S. at 687-694; Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).  Thus, an applicant must show both error and prejudice to be entitled to relief in a PCR proceeding.  Strickland, 466 U.S. at 687-94; Scott v. State, 334 S.C. 248, 513 S.E.2d 100 (1999).
The burden is on the applicant in a post-conviction proceeding to prove the allegations in his application. 
Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).  An appellate court will affirm the PCR courts decision when its findings are supported by any evidence of probative value in the record.  Cherry, 300 S.C. at 119, 386 S.E.2d at 626.  However, an appellate court will not affirm the decision when it is not supported by any probative evidence. 
Holland v. State, 322 S.C. 111, 470 S.E.2d 378 (1996).
We conclude the record does not contain probative evidence supporting the PCR judges decision.  While Respondent arguably has shown his attorney erred in not calling the two witnesses presented at the PCR hearing, Respondent has failed to show prejudice.
Respondent has failed to prove there is a reasonable probability the outcome of the trial would have been different had the two witnesses testified.  The testimony of the two witnesses is largely cumulative to information presented to the jury at trial, i.e., Victim was a hard-drinking man with violent tendencies who previously had threatened to kill or harm Respondent.  Respondents testimony and, to a lesser degree, the testimony of Ms. Jordan and Randy Brown on cross-examination, adequately conveyed this information to the jury.  Consequently, evidence of probative value does not support the PCR judges ruling.
CONCLUSION
We reverse the ruling of the PCR judge granting a new trial to Respondent.
REVERSED.
 TOAL, C.J., MOORE, WALLER,  and PLEICONES, JJ., concur.

[1]  Respondent testified he kicked over a coffee table after the stabbing, but denied threatening to kill Victim, Ms. Jordan, or Randy.
[2]  The Victim, Cleveland Brown; the mobile home roommate, Randy Brown; and Respondents PCR witness, Lillie Mae Brown, apparently are not related.